**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Slep-Tone Entertainment Corporation, | No. CV-12-02631-PHX-NVW |
| Plaintiff, | **ORDER** |
| v. | |
| Donald Kugel, et al., | |
| Defendants. | |

Before the Court are Plaintiff's Motion for Summary Judgment (Doc. 106), Defendant Ernest McCullar's Response (Doc. 108) and Plaintiff's Reply (Doc. 109). For the following reasons, Plaintiff's Motion will be granted.

**I.    BACKGROUND**

Plaintiff sued Defendant for trademark infringement and unfair competition in 2009. Pursuant to a settlement agreement ("Agreement") reached by the parties in May 2010, Defendant agreed to (1) pay Plaintiff a total of $51,000 over the course of eight years, with two up-front payments of $1,500 followed by 96 monthly payments of $500, (2) employ only "original discs," as that term is defined in the Agreement, when producing karaoke shows for a period of three years, (3) provide Plaintiff with any "non-original media" in Defendant's possession, and (4) refrain from manufacturing any media bearing the SOUND CHOICE trademark. The Agreement provided that Plaintiff would furnish to Defendant two groups of original discs, each featuring at least 4,800 karaoke tracks. In addition, Plaintiff pledged (1) not to bring any copyright or trademark

infringement suit against Defendant based on conduct prior to execution of the Agreement and (2) to dismiss Defendant from the pending trademark infringement suit, without prejudice, within five business days of receiving the first payment from Defendant. This latter provision called on Defendant to "cooperate as necessary or helpful to effectuate such dismissal, as directed by [Plaintiff's] counsel, and specifically [to] sign a stipulation of dismissal in the form provided in EXHIBIT B hereto." Doc. 106-1 at 7. Under Paragraph 15 of the Agreement, if Defendant missed a payment to Plaintiff and failed to cure the breach within 30 days, Plaintiff was entitled, "at its option," to "(y) accelerate any debts owed to it, declaring them immediately due and payable, and institute an action for breach of the AGREEMENT, or (z) void the covenant [not to bring a copyright or trademark suit] and institute an action for trademark infringement, such action being based upon acts of DEFENDANT undertaken both before and after the effective date of this AGREEMENT." *Id.* at 7-8.

Defendant signed this Agreement on May 28, 2010. One week previously, on May 21, 2010, Defendant had filed a Motion to Dismiss Plaintiff's trademark infringement suit. Neither Plaintiff nor the court acted on this Motion until October 26, 2010, when the court issued an order directing Plaintiff to show cause why the suit should not be dismissed. After Plaintiff failed to respond within the allotted ten-day window,[1] the court dismissed Plaintiff's suit on November 17, 2010.

Prior to dismissal, however, a dispute arose between the parties regarding each side's alleged failure to comply with the Agreement. In a May 26, 2010, email, Plaintiff's counsel ("Counsel") asked Defendant to sign and return two documents provided in an attachment: the Agreement and a proposed Stipulation to Dismiss Defendant Ernest McCullar ("Stipulation"), which Counsel said he needed in order to dismiss the suit. Defendant apparently had concerns about the Agreement, and he and Counsel discussed them over the phone on May 28, 2010. Later that day, Counsel sent

---

[1] According to Plaintiff's counsel, he never received a copy of the order because of a "technical failure" in his office. Doc. 106 at 3 n.1.

1  Defendant an email containing a revised version of the Agreement and asked him to
2  return signed copies of the Agreement and the Stipulation; the attachment in this second
3  email does not appear to have included the Stipulation.  Counsel followed up by email on
4  June 1, 2010, to inform Defendant that he had received Defendant's "documents and
5  paperwork" but was still missing a signed copy of the Stipulation.  Doc. 106-3 at 21.
6  Defendant responded that he had not received a copy of the Stipulation but would sign
7  and mail it to Counsel if he provided a new attachment, which Counsel did on June 7,
8  2010.  Counsel never received a signed copy of the Stipulation from Defendant, and
9  Plaintiff never voluntarily dismissed its suit.
10          As required by the Agreement, Defendant made both of the initial $1,500
11 payments he owed Plaintiff, which were due by May 31, 2010, and June 28, 2010, as well
12 as the first monthly installment of $500.  But beginning with the payment due on
13 September 1, 2010, he has missed all subsequent payments.  In December 2012, Plaintiff
14 instituted the instant action against Defendant and several other entities, alleging they had
15 infringed Plaintiff's trademarks and trade dress and engaged in unfair competition.  After
16 the Court severed Defendant from the original action, Plaintiff amended its Complaint to
17 include a breach-of-contract action against Defendant.  The Court later dismissed
18 Plaintiff's trademark and unfair competition claims but retained jurisdiction over the
19 contract claim.  Plaintiff now moves for summary judgment on that claim, the sole
20 remaining claim.
21
22 **II.    LEGAL ANALYSIS**
23         A party moving for summary judgment must demonstrate that there is no genuine
24 issue as to any material fact in order to be entitled to judgment as a matter of law.  Fed.
25 R. Civ. P. 56(a).  At the summary judgment stage, courts view all evidence in the light
26 most favorable to the non-moving party.  *Rohr v. Salt River Project Agric. Imp. & Power*
27 *Dist.*, 555 F.3d 850, 857 (9th Cir. 2009).  "A trial court can only consider admissible
28 evidence in ruling on a motion for summary judgment."  *Orr v. Bank of Am.*, 285 F.3d

764, 773 (9th Cir. 2002). The movant has the burden of showing the absence of genuine issues of material fact. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1103 (9th Cir. 2000). A material fact is one that might affect the outcome of the suit under the governing law, and a factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The governing law in this case is Arizona contract law. "In order to state a claim for breach of contract, a plaintiff must allege the existence of a contract between the plaintiff and defendant, a breach of the contract by the defendant, and resulting damage to the plaintiff." *Warren v. Sierra Pac. Mortg. Servs. FN*, No. CV-10-02095-PHX-NVW, 2011 U.S. Dist. LEXIS 44407, at *9 (D. Ariz. Apr. 22, 2011) (citing *Chartone, Inc. v. Bernini*, 207 Ariz. 162, 170, 83 P.3d 1103, 1111 (Ariz. App. Ct. 2004)).

Defendant argues that the Agreement precludes Plaintiff from bringing this claim at all because Paragraph 15 of the Agreement limits Plaintiff, in the event Defendant misses payments, to suing for breach of contract "or" suing for trademark infringement. Because Plaintiff has already sued for trademark infringement following Defendant's non-payment, Defendant maintains, Plaintiff's breach-of-contract claim is not permitted by the Agreement. Plaintiff's covenant not to bring a copyright or trademark infringement suit applies only to "infringement occurring *prior to* the effective date of this AGREEMENT." Doc. 106-1 at 7 (emphasis added). Whether the Agreement bars the present breach-of-contract claim therefore turns on whether the trademark infringement suit Plaintiff filed in December 2012 is based on conduct that allegedly occurred prior to execution of the Agreement.

Plaintiff's Second Amended Complaint avoids using almost any dates. One of the few references to a specific year appears in Paragraph 73, which states that "[b]ased upon observations of [Defendant's] commercial activities *in 2012*, [Plaintiff] believes that [Defendant] has entirely disregarded his obligation not to use media-shifted karaoke accompaniment tracks to produce commercial karaoke shows," as required by the

Agreement. Doc. 66 at 11 (emphasis added). Even if this sentence is interpreted to suggest indirectly that infringement occurred in 2012, the rest of the Second Amended Complaint, read as a whole, also alleges infringing conduct prior to May 2010, when the Agreement was finalized. Paragraph 61, for instance, recites that Defendant "has known at least *since January 2010*, and upon information and belief *since well before that date*, that the creation and use of karaoke accompaniment tracks or computer files representative of karaoke accompaniment tracks that bear the Sound Choice Marks is not authorized." *Id.* at 9 (emphasis added). Although this paragraph does not say it in so many words, the clear implication is that Defendant's alleged infringement has been occurring since before May 2010. The portion of the Second Amended Complaint that details the parties' prior litigation alleges that "[i]n 2009," Plaintiff's employees "observed [Defendant's] commercial use of unauthorized media-shifted karaoke accompaniment tracks that bore the Sound Choice Marks." *Id.* at 10. When presented with Defendant's contention that the breach-of-contract claim is barred by the Agreement, Plaintiff in its Reply did not dispute that its trademark claims encompass all of Defendant's infringing conduct. *See* Doc. 109 at 4.

In the case of a default by Defendant, the Agreement gave Plaintiff the right to sue for breach of contract or to stand on his underlying right to sue for prior trademark infringement, but not both. Plaintiff bound itself to this choice when it signed the Agreement; it cannot now escape the plain limitation of the Agreement through evasive pleading. Plaintiff's breach-of-contract claim fails as a matter of law. Because the Second Amended Complaint on its face shows that Plaintiff's breach-of-contract claim is precluded, it appears there is nothing else to do in this case except grant summary judgment for Defendant on the contract claim and enter a final judgment.

Finally, Defendant asserts that (1) Counsel never mentioned the Stipulation or provided him with a copy to sign and (2) the copy of the Agreement he received from Counsel lacked an amortization schedule laying out when his payments were due to

Plaintiff. As resolving these ostensible factual disputes is unnecessary, the Court will not address them.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment (Doc. 106) is denied.

IT IS FURTHER ORDERED that by October 14, 2014, Plaintiff shall file with the Court a memorandum stating any reason why summary judgment should not be granted for Defendant.

Dated this 1st day of October, 2014.

_____
Neil V. Wake
United States District Judge